UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| MELISSA WADDLE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:20-cv-04022-SLD-JEH |
| LOUIS DEJOY,[1] | ) ) ) |
| Defendant. | ) ) |

## ORDER

Before the Court is Defendant Louis DeJoy, Postmaster General for the United States Postal Service's ("USPS"), Motion for Summary Judgment, ECF No. 16. Also before the Court are Defendant's motions to seal documents, ECF No.18, and correct its memorandum of law, ECF No. 20, that were submitted in support of the summary judgment motion. For the reasons that follow, the motions are GRANTED.

## BACKGROUND[2]

Plaintiff Melissa Waddle is a supervisor for the USPS who has worked in customer service and delivery operations. Her duties include assisting customers, overseeing daily operations, running reports, correcting timekeeping errors, and managing employee resources.

---

[1] Louis DeJoy is now Postmaster General for the United States Postal Service. Pursuant to Federal Rule of Civil Procedure 25(d), when a public officer named in her official capacity ceases to hold office while the action is pending, her "successor is automatically substituted as a party." The Clerk is directed to terminate Megan J. Brennan as a defendant on the docket and add Louis DeJoy.

[2] At summary judgment, a court "constru[es] the record in the light most favorable to the nonmovant and avoid[s] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Unless otherwise noted, the facts related here are taken from the USPS's statement of undisputed material facts in its corrected memorandum of law, Mem. Supp. Mot. Summ. J. 6–16, ECF No. 20-1; Waddle's response to the USPS's statement of undisputed material facts and additional facts, Mem. Supp. Resistance Mot. Summ. J. 2–10, ECF No. 23-1; the USPS's reply thereto, Reply 1–15, ECF No. 24; and exhibits to the filings, which the Court identifies with descriptive titles for ease of reference.

At the beginning of 2018, Waddle worked at the Quad Cities Processing and Distribution Facility ("QCP&DF") in Milan, Illinois. In May 2018, she filed a complaint with the Equal Employment Opportunity ("EEO") office, alleging a hostile work environment and harassment by two QCP&DF supervisors. On June 15, 2018, Waddle began taking leave to address mental health issues stemming from the harassment. In July 2018, Waddle's psychiatrist diagnosed her with post-traumatic stress disorder ("PTSD") and adjustment disorder.

On November 13, 2018, Waddle's psychiatrist cleared her to return to work. Waddle contacted Sarah Weller, a USPS occupational nurse. Waddle told Weller that she could go back to work, but her psychiatrist did not believe she should return to the QCP&DF. Waddle told Weller she wanted to transfer facilities, and Weller replied she would forward the request to human resources.

On December 13, 2018, Waddle had a call with Human Resources Manager Anjeannette Pettinger. The parties dispute what was said. Waddle alleges she told Pettinger that she suffered from adjustment disorder and needed to be transferred to return to work. Waddle Aff. ¶ 7, Mem. Supp. Resistance Mot. Summ. J. Ex. A, ECF No. 23-1 at 19–21. She also alleges she told Pettinger about her prior EEO complaint. *Id.* According to Waddle, Pettinger then offered to transfer her to an open supervisor position in Bettendorf, Iowa. *Id.* ¶ 8. Waddle accepted, and Pettinger told her to contact Bettendorf postmaster Ellen Opperman to discuss a start date.[3] *Id.* Waddle further alleges that when she contacted Opperman, Opperman was unaware of the offer. Mem. Supp. Resistance Mot. Summ. J. 5. Opperman said she would speak to Pettinger and operations manager Thomas Allen before getting back to Waddle with more information. *Id.*

---

[3] The parties spell the Bettendorf postmaster's surname inconsistently. For consistency, the Court will default to "Opperman," the spelling used by the postmaster in her EEO investigative affidavit. *See* Opperman EEO Investigative Aff., ECF No. 17-3 at 75–ECF No. 17-4 at 5.

2

The USPS maintains that Waddle never told Pettinger about her adjustment disorder or offered her the Bettendorf job. Mem. Supp. Mot. Summ. J. 8. Instead, when Pettinger mentioned Bettendorf, she "was simply asking [Waddle] if Bettendorf was an acceptable accommodation." Pettinger EEO Investigative Aff. 2, ECF No. 17-3 at 68–74. Pettinger further explained that if Bettendorf became available, "there [was] a formal process" before Waddle would receive an offer. *Id.* According to Pettinger, this was a "complex" process that would require her to coordinate with management and the USPS legal department. *Id.* at 4.

The USPS also disputes Waddle's account of her call with Opperman. According to the USPS, Opperman told Waddle that she could not discuss the Bettendorf position with her because she had not received any information about Waddle transferring to Bettendorf. Mem. Supp. Mot. Summ. J. 11; *see also* Opperman EEO Investigative Aff. 6, ECF No. 17-3 at 75–ECF No. 17-4 at 5.

On January 3, 2019, Waddle emailed Pettinger to "pinpoint a start date in Bettendorf . . . under the Reasonable Accommodations clause of the Rehabilitation Act." Jan. 3, 2019 12:17 P.M. Waddle E-Mail 1, ECF No. 17-4 at 29–30. Pettinger replied that she had just spoken with "Tom [Allen]" and that she would "send[] [Waddle] the information we need to continue with the reasonable accommodation process." Jan. 3, 2019 12:43 P.M. Pettinger E-Mail, ECF No. 17-4 at 29.

On January 7, 2019, Waddle emailed Pettinger about a supervisor in Moline, Illinois, who she heard wanted to request a transfer to Bettendorf. Waddle wrote that "[i]f Ellen [Opperman] would prefer to take him as a transfer, I am open to taking his place in Moline." Jan. 7, 2019 1:36 P.M. Waddle E-Mail 1–2, ECF No. 17-4 at 34–35.

On January 11, 2019, Waddle sent a follow-up email beginning "[a]ny word on [Moline] or Bettendorf?"  Jan. 11, 2019 11:32 A.M. Waddle E-Mail 2, ECF No. 17-4 at 33–34.  She noted that it had been a month since her call with Pettinger and two months "since [she] started trying to get back to work."  *Id.*  Pettinger replied that she was working through the approval process. She explained she had not sent Waddle the reasonable accommodation information mentioned in her January 3 email because it would be unnecessary if Waddle's transfer was approved. Pettinger also asked Waddle how she felt about "the possibility of [working at the facility in] Aledo[, Illinois] if Bettendorf doesn't work out."  Jan. 11, 2019 11:35 A.M. Pettinger E-Mail, ECF No. 17-4 at 33.  Waddle replied she would prefer not to work in Aledo because of the commute.

On January 17, 2019, Pettinger emailed Waddle to tell her that the USPS would be posting the Bettendorf position for applicants.  She explained that because there had been some requests for lateral transfers to Bettendorf, "we think it is in the best interest of the Postal Service to post the job and everyone can compete."  Jan. 17, 2019 10:37 A.M. Pettinger E-Mail 1, ECF No. 17-4 at 32–33.  Pettinger wrote that she could offer Waddle the job in Aledo.  Pettinger could also coordinate a temporary transfer so that Waddle could begin work that week and decide whether she wanted a permanent reassignment to Aledo from the QCP&DF.  *Id.*  Waddle ultimately did not pursue an application for the Bettendorf position, and a postal service employee named Vicky Ratcliff was hired.

Waddle replied reiterating her concern about the Aledo commute.  She asked if she would be paid for mileage, adding that "[t]he reason I am off, the reason I cannot go back to the plant is not my own creation."  Jan. 17, 2019 2:09 P.M. Waddle E-Mail, ECF No. 17-4 at 32.

4

Pettinger responded that Waddle would be paid for mileage while in the temporary role. Pettinger wrote that although she understood that Waddle believed she had a hostile work environment at the QCP&DF, she could not make Waddle leave that facility and Waddle would need to let Pettinger know what she wanted done with regard to Aledo. Waddle replied to Pettinger, again expressing that she did not believe "the person who has been targeted should be the one who is forced to commute." Jan. 17, 2019 2:42 P.M. Waddle E-Mail, ECF No. 17-4 at 31. She further stated she did not consider Aledo "reasonable" because of the commute. *Id.* She concluded that "[o]nce I have given this [offer] to my attorney for advice and on how [sic] to proceed . . . , I anticipate that I will be ready to go back to work . . . Jan[uary] 26." *Id.*

On January 24, 2019, Waddle's attorney, Stephen Fieweger, emailed Pettinger, stating that Waddle "should not be required to commute to Aledo, Illinois, in order to have her reasonable accommodation request met." Jan. 24, 2019 8:51 A.M. Fieweger E-Mail, Mem. Supp. Resistance Mot. Summ. J. Ex. B, ECF No. 23-1 at 22. He asked Pettinger to advise by close of business the next day "whether the postal service will reasonably accommodate [Waddle] and place her in the open Bettendorf position." *Id.*

On February 12, 2019, Waddle emailed Pettinger to follow up on Fieweger's email. Pettinger replied that Fieweger had already received a response and that Waddle needed to decide if communication would come through her or her attorney. Waddle and Pettinger exchanged additional emails, including a message in which Pettinger told Waddle she would send her the reasonable accommodation materials. However, Pettinger never sent those materials based on the legal department's opinion that Waddle had not substantiated her right to a reasonable accommodation.

5

Throughout February and March, Waddle emailed various USPS higher-ups, including multiple messages to then-Postmaster General Megan Brennan, about her situation. The emails summarized the events that led to her initial EEO complaint, her communications with Pettinger, and her position that the commute to Aledo was not acceptable and that she should be transferred to Bettendorf.

In a letter dated March 15, 2019, Pettinger notified Waddle that her messages had been received by all parties. She wrote that Waddle could either return to the QCP&DF or transfer to Aledo. The letter included a form for Waddle to indicate her choice of position along with an envelope to return the form. She asked Waddle to respond within seven days.

Waddle submitted her response on April 3, 2019. *See* Reply 8, ECF No. 24. (Waddle contends she received the letter on April 2, 2019. Mem. Supp. Resistance Mot. Summ. J. 6). On April 15, 2019, Waddle requested a start date from Pettinger. She began working as a supervisor at the Aledo facility on May 11, 2019.

On May 29, 2019, Waddle filed a complaint with the EEO office, alleging that Pettinger engaged in disability discrimination and retaliation when she failed to transfer Waddle to Bettendorf, delaying her return to work. Waddle received a final agency decision on December 5, 2019. She then filed this action with the Court on February 11, 2020. *See* Compl., ECF No. 1. She brings two claims against the USPS: first, that Pettinger retaliated against Waddle for her initial EEO activity, and second, that Pettinger discriminated against Waddle on the basis of disability by failing to grant her the reasonable accommodation of the transfer.[4] *Id*. at 4–6.

---

[4] Waddle's Complaint alleges only "disability discrimination" and does not cite to any statute. *See* Compl. 5–6. The Court construes Waddle's claim as having been brought under Section 504 of the Rehabilitation Act, which provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination . . . under any program or activity conducted by . . . the United States Postal Service." 29 U.S.C. § 794(a).

The USPS now moves for summary judgment on both counts, arguing that Waddle is not disabled under the meaning of the Americans with Disabilities Act ("ADA") and cannot provide evidence of retaliation.[5] Mem. Supp. Mot. Summ. J. 3–4, ECF No. 20-1. The USPS also moves to correct its memorandum of law submitted in support of summary judgment, *see* ECF No. 20, and seal documents attached to its summary judgment motion, *see* ECF No. 18. The Court grants the USPS's unopposed motion to correct the citation inconsistencies in its memorandum of law. Because the documents – Waddle's medical records — should remain private, the Court also grants the motion to seal.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate if the party opposing summary judgment fails to establish a genuine issue of fact on an element essential to its case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Where one party has properly moved for summary judgment, the non-moving party must respond "by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). The court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial"—that is, whether "there is sufficient evidence favoring the non[-

---

[5] Although the USPS frames its argument under the ADA, the ADA does not apply to federal workers, *see Vargas v. DeJoy*, 980 F.3d 1184, 1188 n.4 (7th Cir. 2020); in this case, the Rehabilitation Act applies. *See id.* Because courts look to "same standards and provisions that govern the [ADA]" when resolving Rehabilitation Act claims, *see id.*, the Court will infer the USPS intends to argue under the Rehabilitation Act and thus apply its ADA arguments to Waddle's Rehabilitation Act claim.

]moving party for a jury to return a verdict" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997). The court must view the evidence "in the light most favorable to the non-moving party[] and draw[] all reasonable inferences in that party's favor." *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255). However, the non-movant "is not entitled to the benefit of inferences that are supported by only speculation or conjecture." *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (quotation marks omitted). "A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999) (quoting *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir. 1994)).

**II.     Analysis**

    **a. Disability Discrimination[6]**

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination . . . under any program or activity conducted by . . . the United States Postal Service." 29 U.S.C. § 794(a). Courts "resolve Rehabilitation Act claims by looking to the same standards and provisions that govern the Americans with Disabilities Act." *Vargas v. DeJoy*, 980 F.3d 1184, 1188 n.4 (7th Cir. 2020).[7]

---

[6] To follow the order in which both parties have briefed the issues, the Court addresses Waddle's second count of disability discrimination before her first count of retaliation.

[7] The Court also cites to cases involving other antidiscrimination laws, such as Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, because the statutes are similar. *See Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1017 (7th Cir. 1996) ("[I]n analyzing claims under the ADA, it is appropriate to borrow from our approach to the respective analog under Title VII.").

Under both the Rehabilitation Act and the ADA, a failure to accommodate claim requires the plaintiff to prove "(1) he was a qualified individual with a disability, (2) his employer was aware of his disability, and (3) his employer failed to reasonably accommodate his disability." *Id.* at 1188. The USPS argues Waddle cannot meet any of these burdens. Mem. Supp. Mot. Summ. J. 21–23. Thus, the Court begins by asking whether Waddle has met her initial burden of showing that she is a qualified individual with a disability under the Rehabilitation Act.

"'[Q]ualified individual with a disability' [is a] term[] of art that must be understood within [its] respective statutory context[]." *Weigel v. Target Stores*, 122 F.3d 461, 466 (7th Cir. 1997). This context includes a "fundamental statutory requirement that only impairments that substantially limit the ability to perform a major life activity constitute disabilities." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 556 (1999); *see* 42 U.S.C. § 12102(1)(A) ("The term 'disability' means . . . a physical or mental impairment that substantially limits one or more major life activities of such individual."). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). When determining whether an individual's disability substantially limits a major life activity, the individual's performance of that activity is compared with that of the average person in the general population. *See E.E.O.C. v. AutoZone, Inc.*, 630 F.3d 635, 642 (7th Cir. 2010).

Here, the parties do not disagree that Waddle suffers from PTSD and adjustment disorder but dispute whether those diagnoses substantially limit any major life activity such that she is entitled to a reasonable accommodation. *See* Reply 1–2. Waddle states that her mental health conditions "affect [her] ability to think clearly and to be able to concentrate on [her] work,"

9

Waddle Aff. ¶ 3, which suggests that she is arguing that she is substantially limited in the major life activities of working and thinking.

To show that the major life activity of working is substantially limited, "a plaintiff must show that the impairment significantly restricts the ability to perform a class of jobs or a broad range of jobs in various classes." *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009) (quotation marks omitted). Thus, the Seventh Circuit has held consistently that in a situation where "a plaintiff 'can do the same job for another supervisor, she can do the job, and does not qualify under the ADA.'" *Makeda-Phillips v. Ill. Sec'y of State*, 642 F. App'x 616, 618 (7th Cir. 2016) (quoting *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1062 (7th Cir. 2000)); *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996) ("[A]n inability to perform a particular job for a particular employer is not sufficient to establish a substantial limitation on the ability to work; rather, the impairment must substantially limit employment generally." (quotation marks omitted)).

The medical records submitted to the Court do not provide evidence that Waddle was unable to perform either her job or a broader class of jobs. Instead, Waddle admits in her response that she was able to perform her required work-related duties and that there were no duties associated with her position she was unable to perform. *See* Mem. Supp. Resistance Mot. Summ. J. 3. This admission necessarily contradicts a showing that she is substantially limited in the major life activity of working because she has admitted to no limitations, substantial or otherwise, in either her current role or a broader class of jobs. *See Weiler*, 101 F.3d at 524. Moreover, none of the medical information submitted to the Court substantiates that Waddle is substantially limited in the major life activity of thinking—only that, when working at the QCP&DF, she experienced anxiety that caused her to "second guess everything" and "feel[] that

10

[she] must execute all duties perfectly to keep from being targeted" by the two supervisors who allegedly harassed her. Waddle EEO Investigative Aff. 2, ECF No. 17-2 at 47–56; *compare Nawrot v. CPC Int'l*, 277 F.3d 896, 905 (7th Cir. 2002) (finding that the major life activity of thinking was substantially limited where the plaintiff's hypoglycemic episodes caused him to lose consciousness and make nonsensical statements) *with Steffy v. Cole Vision Corp.*, Case No. 05-C-0204, 2008 WL 11463619, at *14–17 (March 17, 2008) (finding that the major activity of thinking was not substantially limited where the plaintiff, who suffered from PTSD and depression, had to "take things slower," needed instructions repeated, and had memory issues). Moreover, Waddle identified no limitations in her personal life as a result of her diagnoses, including any limitations on her ability to think. *See* Waddle EEO Investigative Aff. 3.

Because she has not shown she is substantially limited in a major life activity, the Court therefore finds that Waddle has failed to demonstrate she is a qualified individual with a disability under the Rehabilitation Act. Because a plaintiff must first show that she is a qualified individual with a disability to succeed on a failure to accommodate claim, the Court need not continue its analysis to ask whether the USPS was aware of Waddle's disability or whether her disability was reasonably accommodated. *See Vargas*, 980 F.3d at 1188.

Nevertheless, the Court notes briefly that, regardless of any statutory entitlement to an accommodation, Waddle *was* offered an accommodation: the transfer to Aledo. Waddle's contention is that she was entitled to the transfer to Bettendorf, citing *Gile v. United Airlines, Inc.*, 95 F.3d 492 (7th Cir. 1996), to support her proposition that a transfer to an open, vacant position is a reasonable accommodation. Mem. Supp. Resistance Mot. Summ. J. 11; *see Gile*, 95 F.3d at 498–99. But *Gile* does not support the proposition that the employee must then be transferred to the open position of her choice, or that transfer must be the default

11

accommodation. Rather, the employer must "identify the full range of alternative positions . . . [and] consider transferring the employee to any of these other jobs." *Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 678 (7th Cir. 1998).

Waddle does not appear to argue that Bettendorf was singularly able to accommodate her needs. Indeed, she emailed Pettinger letting her know she would also be amenable to a transfer to Moline. *See* Jan. 7, 2019 1:36 P.M. Waddle E-Mail 1–2. Her only apparent issue with Aledo is the commute. But the fact that Waddle would have preferred Bettendorf "is of no consequence" because an "employer is not obligated to provide an employee the accommodation he requests or prefers," only a reasonable accommodation. *See Corder v. Lucent Techs. Inc.*, 162 F.3d 924, 927–28 (7th Cir. 1998) (finding that the employer offered the plaintiff a reasonable accommodation by arranging for a transfer to a different office, where the plaintiff objected to that office because of a "significantly lengthier commute").

Finally, Waddle argues that various other facts on the record create disputed issues of material fact in her case: namely, that the USPS did not follow its reasonable accommodation procedures and that she is more qualified than the employee who was hired to work in Bettendorf, Vicky Ratcliff. Mem. Supp. Resistance Mot. Summ. J. 13–14.

To the extent that Waddle is claiming that the USPS is responsible for a breakdown of the interactive process, "there is no independent cause of action for breakdown of the interactive process under the [Rehabilitation Act]. . . . Liability arises from these types of allegations only when the employer's failure to engage in an interactive process resulted in a failure to identify an appropriate accommodation for the qualified individual." *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 961 (7th Cir. 2021) (quotation marks omitted). Thus, because Waddle is not entitled to an accommodation under the Rehabilitation Act, this claim necessarily fails.

And to the extent that Waddle is alleging a claim of disparate treatment based on Ratcliff's hiring, this claim fails, too, for the same reason: Waddle has not shown that she is disabled under the Rehabilitation Act. Moreover, "[i]f a plaintiff does not apply for a job vacancy that is posted, he cannot make a prima facie case for unlawful discrimination . . . unless the plaintiff demonstrates that the employer's discriminatory practices deterred plaintiff from applying." *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 558 (7th Cir. 2004). Here, Waddle states that Ratcliff, as a non-managerial employee, "did not have the right to be promoted over [her]," Waddle Aff. ¶ 9, and that she believed it would be "ineffective" for her to apply to Bettendorf. Mem. Supp. Resistance Mot. Summ. J. 4. These statements do not suggest that Waddle was deterred from applying based on discriminatory practices at the USPS so much as a belief that she was entitled to Bettendorf, apparently a coveted position, without application.

Because Waddle has not met her burden of showing she is a qualified individual with a disability under the Rehabilitation Act, her claims under the Act fail. Therefore, the Court grants the USPS summary judgment on Waddle's disability discrimination claim.

    b.  **Title VII Retaliation**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, prohibits an employer from "discriminat[ing] against any of his employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" related to an unlawful employment practice. 42 U.S.C. § 2000e-3(a). "To prevail on a Title VII retaliation claim, the plaintiff must prove that (1) he engaged in an activity protected by the statute; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018). At summary judgment, "the dispositive question [is] whether a reasonable jury could

find a but-for causal link between the protected activit[y] and adverse actions at issue." *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 697 (7th Cir. 2017); *see also Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) ("A retaliation claim requires proof that the plaintiff suffered an adverse employment action because of his statutorily protected activity[.]").

With regard to the first element, Waddle clearly engaged in protected activity when she filed her initial EEO complaint against the two QCP&DF supervisors.[8] With regard to the second, Waddle appears to proffer two adverse employment actions: "Anjeannette Pettinger[']s] fail[ure] to place her in the open Supervisor Customer Service position in Bettendorf" and "the delay in returning her to work." Mem. Supp. Resistance Mot. Summ. J. 15–16.

As an initial matter, the Court is not persuaded that either of these grievances, particularly the first, constitutes an adverse employment action under Title VII. *See Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000) ("An adverse employment action is a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." (alteration in original) (quotation marks omitted)); *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003) ("[T]he employee must be able to show a quantitative or qualitative change in the terms or conditions of employment."), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). There is no indication that the rescission of the Bettendorf offer, if it indeed was rescinded, materially changed the terms or conditions of Waddle's employment. *See Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 275 (7th Cir. 2004) (finding an employer's denial of a request for a "lateral transfer offering parallel pay, benefits, and responsibilities" was not an

---

[8] That Waddle engaged in protected activity is not in dispute. *See* Answer ¶ 15, ECF No. 8.

14

adverse employment action). But because the parties focus on whether Waddle can provide evidence of a causal link between her initial EEO activity and USPS's allegedly adverse responses, the Court will follow their lead and focus on that question.

Circumstantial evidence, such as "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive[d] better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action," can support finding a causal link between a protected activity and an adverse employment action. *Rowlands v. United Parcel Serv. – Fort Wayne*, 901 F.3d 792, 802 (7th Cir. 2018) (alteration in original). Here, Waddle argues that Pettinger retaliated against her "[b]ased on [her] knowledge of the pending EEO claims" because Pettinger allegedly revoked the offer sometime after learning about Waddle's prior EEO activity. Mem. Supp. Resistance Mot. Summ. J. 16. But this conclusory allegation is far from sufficient to support any inference that Pettinger retaliated against Waddle. *See Sanchez v. Henderson*, 188 F.3d 740, 747 (7th Cir. 1999) ("[M]ere knowledge of the plaintiff's protected activity prior to an adverse employment action does not establish a retaliatory motive.").

Nor Waddle has provided evidence that the USPS's proffered reasons for either adverse action—the failed Bettendorf transfer or the delay—are pretextual. With regard to Bettendorf, Pettinger told Waddle that the position would be opened to applications because other employees had expressed interest in the job. *See* Jan. 17, 2019 10:37 A.M. Pettinger E-Mail 1. This rationale should not have come as a surprise to Waddle, because it is consistent with her own email to Pettinger about the Moline supervisor who wanted to transfer to Bettendorf. *See* Jan. 7,

15

2019 1:36 P.M. Waddle E-Mail 1–2.  In fact, the desirability of and competition for the Bettendorf role appears to be precisely why Waddle offered to transfer to Moline instead.

And with regard to the delay, the USPS maintains that was caused by the complex administrative process needed to facilitate transfers between facilities, as well as inconsistent communication from Waddle and her attorney.  Mem. Supp. Mot. Summ. J. 26–27.  Waddle simply asserts that the process should not have taken as long as it did, and argues that she told Pettinger she could begin work on January 26 in her January 17 email.  Mem. Supp. Resistance Mot. Summ. J. 16–17; *see* Jan. 17, 2019 2:42 P.M. Waddle E-Mail.  But Waddle wrote in that email not that she would accept the offer, but that she would run it by her attorney for advice on how to proceed, *see id.*—and her attorney subsequently emailed Pettinger to reiterate that the Aledo commute was unacceptable, *see* Jan. 24, 2019 8:51 A.M. Fieweger E-Mail.  As Waddle and her attorney continued to advocate for Bettendorf, it was understandable for Pettinger to assume she was no longer interested in Aledo.

But even if Waddle has provided evidence of a delay that could be attributed to the USPS, she provides no evidence that the delay was *because of* her prior EEO complaint.  Her allegations perhaps provide evidence of an administrative process that was, at times, rife with miscommunication and misunderstanding, but nothing on the record even hints at retaliatory animus.  Thus, Waddle has failed to meet her burden on a necessary element.  Accordingly, the Court grants summary judgment for the USPS on Waddle's retaliation claim.

## CONCLUSION

Accordingly, the Motion for Summary Judgment, ECF No. 16, is GRANTED.  Defendant's motions to seal documents, ECF No.18, and correct its memorandum of law, ECF

No. 20, are also GRANTED.  The Clerk is directed to file the corrected memorandum of law on the docket.  The Clerk is further directed to enter judgment and close the case.

Entered this 29th day of September, 2021.

s/ Sara Darrow<br>SARA DARROW<br>CHIEF UNITED STATES DISTRICT JUDGE